UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., | : : : | |
| Plaintiff, | : : | Civil Action No. 1:12-cv-00536-CCC |
| v. | : : | (Conner, J.) |
| REP. RICK SACCONE, CLANCY MYER, and ANTHONY FRANK BARBUSH, | : : : : : | |
| Defendants. | : | |

### **PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS**


Lawrence M. Otter
Attorney At Law
P.O. Box 2131
Doylestown, PA 18901
(267) 261-2948
*Attorney for Plaintiff*

Richard L. Bolton
BOARDMAN & CLARK LLP
1 South Pinckney Street, 4th Floor
Madison, WI 53701-0927
(608) 257-9521
*Attorney for Plaintiff*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES………………………………………………………  ii

I.  STATEMENT OF ISSUES PRESENTED………………………………..  1

II.  INTRODUCTION………………………………………………………  1

III.  STANDARD OF REVIEW…………………………………………………..  2

IV.  STATEMENT OF FACTS………………..……………………………  2

V.  ACTUAL LEGAL COERCION IS NOT REQUIRED FOR STANDING
TO CHALLENGE GOVERNMENT SPEECH ENDORSING
RELIGION UNDER THE ESTABLISHMENT CLAUSE………………………  4

   A.  Coercion Is Not Required Under The Controlling Law Of The
   Third Circuit And The Supreme Court……………………………..  4

   B.  Government Speech Cannot Endorse Or Disparage
   Religion, Even By Popular Vote………………………………….  6

   C.  The Defendants Ignore The Controlling Law Of The Third
   Circuit In Their Singular Reliance On A Seventh Circuit Decision………  9

   D.  Unwanted Exposure To Government Speech Endorsing Religion
   Is A Concrete Injury Particular To Those Nonbelievers Within
   The Relevant Political Community…………………….……………  11

VI.  HONORIFIC RESOLUTIONS BY A SINGLE HOUSE OF THE
PENNSYLVANIA GENERAL ASSEMBLY ARE NOT
LEGISLATIVE IN SUBSTANCE OR FORM…………………………  15

VII.  CONCLUSION…………………………………………………………  20

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

American Civil Liberties Union of New Jersey v. Black Horse Pike
Regional Board of Education, 84 F.3d 1471, 1477-78 (3rd Cir. 1996)……………… 7

American Civil Liberties Union of New Jersey v. Schundler,
104 F.3d 1435, 1444 (3rd Cir. 1997)…………………………………………………… 14

American Jewish Congress v. City of Chicago,
827 F.2d 120, 137 (7th Cir. 1987)……………………………………………………… 10

Anspach v. City of Philadelphia, 503 F.3d 256, 272 (3rd Cir., 2007)………………… 5

Baraka v. McGreevey, 481 F.3d 187, 198 (3rd Cir. 2007)…………………………….. 16

Board of Education v. Barnette, 319 U.S. 624 (1943)………………………………… 7

Board of Education of Westside Community Schools,
(Dist. 66) v. Mergens, 496 U.S. 226, 250 (1990)……………………………………… 9

Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998)……………………………………… 16, 18

Books v. Elkhart County, 401 F.3d 857 (7th Cir. 2005)……………………………….. 9

Borden v. School District of Township of East Brunswick,
523 F.3d 153, 175 (3rd Circ. 2008)…………………………………………………… 5, 6

Catholic League for Religious and Civil Rights v. San Francisco,
624 F.3d 1043 (9th Cir. 2010)………………………………………………………….. 11, 12, 13

Chambers v. Marsh, 675 F.2d 228, 232 (8th Cir. 1982)……………………………….. 19

Child Evangelism Fellowship of New Jersey v. Stafford Township
School District, 386 F.3d 514, 524 (3rd Cir. 2004)…………………………………… 8

Choose Life Illinois v. White, 547 F.3d 853, 859 (7th Cir. 2008)…………………….. 9

City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 448 (1985)……………… 7

Page

County of Allegheny v. American Civil Liberties Union,
492 U.S. 573, 597 n. 47 (1989)……………………………………………………….. 10, 12, 14

Doe v. Indian River School District, 653 F.3d 256, 270 (3rd Cir. 2011)……………..   5

Eastland v. United States Servicemen's Fund, 421 U.S. 491, 501-02 (1975)…………  16, 18

Engel v. Vitale, 370 U.S. 421, 430 (1962)…………………………………………….   5, 6

Forrester v. White, 484 U.S. 219, 226 (1988)…………………………………………  18

Fowler-Nash v. The Democratic Caucus of the Pennsylvania
House of Representatives, 469 F.3d 328, 331 (3rd Cir. 2006)………………………..  17

Free Thought Society of Philadelphia v. Chester County,
334 F.3d 247, 260 (3rd Cir. 2003)……………………………………………………  14

Freedom From Religion Foundation, Inc. v. City of Marshfield,
203 F.3d 487, 491 (7th Cir. 2000)……………………………………………………   9

Freedom From Religion Foundation, Inc. v. Hickenlooper,
2012 Colo. App. LEXIS 741 (May 10, 2012)………………………………………...  11

Freedom From Religion Foundation v. Obama, 641 F.3d 803 (7th Circ. 2011)……...   9, 10

Gravel v. United States, 408 U.S. 606, 625 (1972)…………………………………...  16, 17

Gwinn v. Kane, 348 A.2d 900, 909 (Pa. 1975)………………………………………  19

Hafer v. Melo, 502 U.S. 21, 28-29 (1991)……………………………………………  16

Jubelirer v. Rendell, 953 A.2d 514, 529 (Pa. 2008)…………………………………  19

Kalman v. Cortes, 723 F. Supp. 2d 766, 782-83 (E. D. Pa. 2010)……………………   6

Kilbourn v. Thompson, 103 U.S. 168 (1880)………………………………………...  17

Lee v. Weisman, 505 U.S. 577, 591-92 (1992)………………………………………   7, 8

Marbury v. Madison, 5 U.S. 137 (1880)……………………………………………..  20

McCreary County v. ACLU of Kentucky, 545 U.S. 844 (2005)……………………..  10, 12

Modrovich v. Allegheny County, 385 F.3d 397, 401 (3rd Cir. 2004)……………….   6

Page

Parents United for Better Schools, Inc. v. School District of
Philadelphia Board of Education, 978 F. Supp. 197, 211, n. 16 (E. D. Pa. 1997)…… 6

Pinker v. Roche Holdings, Ltd., 292 F.3d 374, n. 7 (3rd Cir. 2002)………………… 2

Pleasant Grove City v. Summum, 555 U.S. 460, 129 S. Ct. 1125, 1131-32 (2009)…. 12

Powell v. McCormack, 395 U.S. 486, 504-05 (1969)……………………………… 18

Rosenberg v. Rector and Visitors of the University of Virginia,
515 U.S. 819, 833 (1995)………………………………………………………… 8, 9

School District of Abington Township v. Shempp, 374 U.S. 203, 223 (1963)……… 5

Simmermon v. Gabbianelli, 2012 U.S. Dist. LEXIS 42658 (D. N.J. 2012)………… 18, 19

Suhre v. Haywood County, 131 F.3d 1083, 1087 (4th Cir. 1997)…………………… 12, 13, 14

Tenney v. Brandhove, 341 U.S. 367, 376-78 (1951)………………………………… 17, 18

United States v. Brewster, 408 U.S. 501, 513 (1972)………………………………... 16, 17

Valley Forge Christian College v. Americans United for Separation
of Church and State, Inc., 454 U.S. 464 (1982)…………………………………… 12, 13, 14

Van Orden v. Perry, 545 U.S. 677, 693 (2005)……………………………………… 10

Vasquez v. Los Angeles County, 487 F.3d 1246, 1250 n. 4 (9th Cir. 2007)………... 14

Youngblood v. DeWeese, 352 F.3d 836, 840 (3rd Cir. 2003)……………………… 17, 18

## I.    STATEMENT OF ISSUES PRESENTED.

1.    Is actual legal coercion a necessary element under the Establishment Clause, as the defendants argue?

Short Answer:  The United States Supreme Court has consistently held that coercion is not a necessary element under the Establishment Clause, unlike claims brought under the Free Exercise Clause of the First Amendment.

2.    Do honorific resolutions by a single house of the Pennsylvania General Assembly have the substance and procedural attributes of laws necessary to trigger legislative immunity?

Short Answer:  Non-binding and honorific resolutions by a single house of the General Assembly do not constitute laws of the Commonwealth, and they are not adopted pursuant to the constitutional requirements of the Commonwealth for passing laws.

## II.    INTRODUCTION.

Courts have a duty to act when elected officials involve themselves with subjects not constitutionally entrusted to government.  Under the United States Constitution, made applicable in part to the states by the Fourteenth Amendment, our government is one of limited powers. Religion is one of the subjects that the government is proscribed from promoting or endorsing.

Government speech that endorses religion is prohibited by the Establishment Clause without any requirement of coercion.  Government speech endorsing religion is subject to judicial review by persons exposed to such unwanted speech who reside within the relevant political community.   Here, the plaintiff's Pennsylvania members have had unwanted exposure to the disputed "Year of the Bible" resolution within their own community, which is sufficient for standing -- without actual legal coercion.

Honorific resolutions endorsing religion constitute prohibited government speech, but they do not functionally constitute legislation.  The defendants incorrectly claim that even resolutions which are not coercive constitute legislation that is absolutely immune from judicial review.  Honorific resolutions by a single house of the Pennsylvania General Assembly, like the

1

"Year of the Bible" resolution, are not functionally or procedurally legislative in nature.

The defendants admit that the "Year of the Bible" resolution is not a statute or law. The defendants make the mistake, however, of then claiming that all actions by legislators are protected by legislative immunity as a matter of occupational fiat. That is not how legislative immunity works. The Supreme Court instead applies a functional test that considers substance and procedure to determine whether the law-making process is actually implicated, regardless of job title.

Non-binding resolutions by a single house of the Pennsylvania General Assembly are not substantively or procedurally legislative, despite being government speech. Such speech that endorses or promotes religion is proscribed by the Establishment Clause, and it is not insulated by legislative immunity. Here, the "Year of the Bible" resolution epitomizes prohibited government speech that is actionable under the Establishment Clause. Adjudicating this matter, therefore, will not intrude upon any legitimate legislative prerogative, but it will give required effect to the requirements of the Establishment Clause.

## III.   STANDARD OF REVIEW.

In evaluating a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, the court should accept as true all material allegations set forth in the complaint, and the court should construe those facts and reasonable inferences in favor of the non-moving party. Pinker v. Roche Holdings, Ltd., 292 F.3d 374, n. 7 (3rd Cir. 2002).

## IV.   STATEMENT OF FACTS.

The plaintiff, Freedom From Religion Foundation, complains of the defendants regarding a resolution declaring 2012 to be the "Year of the Bible" in Pennsylvania. The House Resolution exhorts citizens and government officials to "study and apply the teachings of the Holy

Scriptures."  (Complaint, ¶ 1.)

The Freedom From Religion Foundation represents and advocates on behalf of its members.  (Complaint, ¶ 7.)  The plaintiff's membership includes individuals residing in Pennsylvania who have had direct and unwanted exposure to the "Year of the Bible" resolution.  (Complaint, ¶ 8.)  The "Year of the Bible" resolution marginalizes and implicitly disparages non-Christians and non-believers, including members of the plaintiff who are residents of Pennsylvania.  (Complaint, ¶ 67.)  The resolution creates a hostile environment for plaintiff's Pennsylvania members and sends a message to those members that Christian beliefs are more legitimate in the eyes of the State than other systems of belief and thought.  (Complaint, ¶¶ 68-69.)

The "Year of the Bible" resolution was proffered by the defendant Rick Saccone as a "non-controversial" resolution on the same day it was introduced.  (Complaint, ¶ 17.)  The resolution also was classified as a "simple resolution" that needed only to be passed by one house of the Pennsylvania General Assembly, in this case, the House of Representatives.  (Complaint, ¶ 19.)  The resolution was then filed and published by the defendants, including on the House website, with anticipated publication and distribution of the resolution to the media and the public.  (Complaint, ¶ 20.)

The "Year of the Bible" resolution has subsequently been reported upon extensively and widely published by the media throughout the State of Pennsylvania, as planned by the defendants.  (Complaint, ¶ 21.)  The resolution has been very divisive among the body politic in Pennsylvania because of its endorsement of the Bible and its teachings as constituting the state-sanctioned religion of Pennsylvania, the principles of which allegedly should be studied and acted upon by government officials and the public.  (Complaint, ¶ 22.)

3

The Establishment Clause prohibits governmental endorsement of religion, even on a majoritarian basis voted upon by elected politicians.  The Establishment Clause protects the liberty of conscience of minorities, including the consciences of non-believers and non-religious persons, who constitute at least 15% of the United States and Pennsylvania populations. (Complaint, ¶ 37.)  The plaintiff's membership includes residents of Pennsylvania who are non-believers.  (Complaint, ¶ 38.)

## V.   ACTUAL LEGAL COERCION IS NOT REQUIRED FOR STANDING TO CHALLENGE GOVERNMENT SPEECH ENDORSING RELIGION UNDER THE ESTABLISHMENT CLAUSE.

### A.   Coercion Is Not Required Under The Controlling Law Of The Third Circuit And The Supreme Court.

The defendants contend that the Freedom From Religion Foundation, in its representative capacity, lacks standing because no claim of actual legal coercion is made.  According to the defendants, no recognized injury arises under the Establishment Clause in the absence of coercion, which they claim the "Year of the Bible" resolution lacks.  The defendants acknowledge that the resolution constitutes official government speech "regarding the value of religion," (Defendants' Brief at 2), but unwanted exposure to such government speech by members of the relevant political community is not enough, in the opinion of the defendants:

> The legislative Resolution here does not require any action or inaction on the part of FFR, its members, or anyone else.  It simply does not mandate anything.  The Resolution here is just one of the multitude of other nonbinding resolutions passed by the Pennsylvania House and Senate, which are nothing more than invitations and acknowledgements that may be freely and effortlessly disregarded.  (Defendants' Brief at 11.)

The defendants misapprehend the requirements of the Establishment Clause as applied by the Third Circuit Court of Appeals -- and the United States Supreme Court.  The Supreme Court has consistently held that while "a violation of the Free Exercise Clause is predicated on

4

coercion, an Establishment Clause violation need not be so attended."  School District of Abington Township v. Shempp, 374 U.S. 203, 223 (1963).

The Third Circuit adheres to the distinction between the Establishment Clause and the Free Exercise Clause recognized by the Supreme Court.  The Establishment Clause otherwise would be indistinguishable from the Free Exercise Clause.  As the Third Circuit recently reaffirmed, "the Establishment Clause is violated by 'enactment of laws which establish an official religion whether those laws operate directly to coerce nonobserving individuals or not.'" Doe v. Indian River School District, 653 F.3d 256, 270 (3rd Cir. 2011), quoting Engel v. Vitale, 370 U.S. 421, 430 (1962).

In Vitale, the Supreme Court held that the practice of using the public school system to encourage recitation of prayer was wholly inconsistent with the Establishment Clause.  The Court held that such prayer amounted to religious activity and it served to officially establish the beliefs professed therein.  That the prayer was "nondenominational," or permitted students to remain silent or leave the classroom during the prayer, did not cure its constitutional defects.  By contrast, in order to establish a Free Exercise violation, a plaintiff must allege that state action is either compulsory or coercive in nature.  "Hence it is necessary in a Free Exercise case to show the coercive effect of the enactment as it operates against him [the plaintiff] in the practice of his religion." Anspach v. City of Philadelphia, 503 F.3d 256, 272 (3rd Cir., 2007).

The Third Circuit has consistently recognized and applied alternative Establishment Clause tests, without requiring coercion as the *sine qua non* of such a claim.  In Borden v. School District of Township of East Brunswick, 523 F.3d 153, 175 (3rd Circ. 2008), the Court recognized that the Supreme Court has set forth three distinct tests for determining whether government action violates the Establishment Clause:  the coercion test, the Lemon test, and the

endorsement test.  While coercion is sufficient under the one test in order to be guilty of an

Establishment Clause violation, such compulsion is not necessary.  In <u>Borden</u>, for example, the

Court did not even address whether the defendant's conduct "violated the Establishment Clause

under the coercion and <u>Lemon</u> tests because we find that <u>Borden's</u> behavior violated the

Establishment Clause under the endorsement test."  <u>Id</u>.  <u>See also</u> <u>Modrovich v. Allegheny</u>

<u>County</u>, 385 F.3d 397, 401 (3rd Cir. 2004) (the coercion test deemed inapplicable in this

Establishment Clause case, but the <u>Lemon</u> test and the endorsement test were both relevant);

<u>Kalman v. Cortes</u>, 723 F. Supp. 2d 766, 782-83 (E. D. Pa. 2010) (court used only the <u>Lemon</u> test

to determine whether a Blasphemy Statute violated the Establishment Clause where neither the

coercion test nor the endorsement test were applicable); and <u>Parents United for Better Schools,</u>

<u>Inc. v. School District of Philadelphia Board of Education</u>, 978 F. Supp. 197, 211, n. 16 (E. D.

Pa. 1997) (citing <u>Engel v. Vitale</u>, 370 U.S. 421, 430 (1962), for the proposition that an

Establishment Clause violation does not depend upon any showing of direct governmental

compulsion.  "The underlying rationale for these cases is that the Establishment Clause is

premised on the belief that a union of government and religion tends to destroy government and

degrade religion.").

### B.      Government Speech Cannot Endorse Or Disparage Religion, Even By Popular Vote.

The Establishment Clause prohibits government speech endorsing religion with or

without coercion -- and regardless of the "will of the majority."  The defendants suggest that such

speech is best left to voting majorities, but the United States Constitution circumscribes what

Government officials can do or say in some matters precisely to protect against usurpations

where government officials should not intrude at all.  The Establishment Clause is such an area

where government officials must operate with constitutional restraint.  The Third Circuit

discussed this fundamental principle in <u>American Civil Liberties Union of New Jersey v. Black</u> <u>Horse Pike Regional Board of Education</u>, 84 F.3d 1471, 1477-78 (3rd Cir. 1996).  In this case, a School Board asked the Court to recognize the right of an electoral plurality to ignore the right of others to worship in a different manner, or in no manner at all.  The Court of Appeals concluded that the Government's emphasis on voting majorities was misplaced in the area of religion.  The Court explained itself as follows:

> An impermissible practice can not be transformed into a constitutionally acceptable one by putting a democratic process to an improper use.  There should be no question "that the electorate as a whole, whether by referendum or otherwise, could not order [governmental] action violative of the [Constitution], and the [Government] may not avoid the strictures of the Constitution by deferring to the wishes or objections of some faction of a body politic." <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 448 (1985).

The Third Circuit further acknowledged in its <u>Black Horse Pike</u> decision that it is frequently necessary to reconcile one's own preferences to the results of a referendum when choosing one's representatives or when voting upon legislative matters, but the Establishment Clause does not allow any one's religious preferences to be compromised in this manner:

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts.  One's . . . fundamental rights may not be submitted to vote; they depend on the outcome of no elections.  <u>Id</u> at 478, quoting <u>Board of Education</u> <u>v. Barnette</u>, 319 U.S. 624 (1943).

The Supreme Court has consistently recognized the importance of the Establishment Clause in prohibiting government officials from making religious endorsements.  The Court thoughtfully considered the reason for this fundamental principle in <u>Lee v. Weisman</u>, 505 U.S. 577, 591-92 (1992):

The First Amendment protects speech and religion by quite different mechanisms.  Speech is protected by insuring its full expression, even when the Government participates, for the very object of some of our most important speech is to persuade the Government to adopt an idea as its own.  The method for protecting freedom of worship and freedom of conscience in religious matters is quite the reverse.  In religious debate or expression, the Government is not a prime participant, for the Framer's deemed religious establishment antithetical to the freedom of all.  The Free Exercise Clause embraces a freedom of conscience and worship that has close parallels in the speech provisions of the First Amendment, but the Establishment Clause is a specific prohibition on forms of state intervention in religious affairs with no precise counterpart in the speech provisions.  The explanation lies in the lesson of history that was and is the inspiration for the Establishment Clause.  The lesson that in the hands of government what might begin as a tolerant expression of religious views may end in a policy to indoctrinate and coerce.  A state-created orthodoxy puts at grave risk that freedom of belief and conscience, which are the sole assurance that religious faith is real, not imposed.

The lessons of the First Amendment are as urgent in the modern world as in the 18th Century when it was written.  One timeless lesson is that if citizens are subjected to state-sponsored religious exercises, the State disavows its own duty to guard and respect that sphere of inviolable conscience and belief, which is the mark of a free people.  To compromise that principle today would be to deny our own tradition and forfeit our standing to urge others to secure the protections of that tradition for themselves.

Government speech endorsing religion invades that "inviolable sphere" protected by the Establishment Clause.  Such government-sponsored speech occurs when a government entity aims "to convey its own message," as in the present case.  <u>Child Evangelism Fellowship of New Jersey v. Stafford Township School District</u>, 386 F.3d 514, 524 (3rd Cir. 2004), quoting <u>Rosenberg v. Rector and Visitors of the University of Virginia</u>, 515 U.S. 819, 833 (1995).  A message of religious endorsement coming from government officials is not allowed under the aegis of the Establishment Clause because a crucial difference exists "between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing

religion, which the Free Speech and Free Exercise Clause protect." Rosenberg, 515 U.S. at 841, quoting Board of Education of Westside Community Schools, (Dist. 66) v. Mergens, 496 U.S. 226, 250 (1990).

> **C.     The Defendants Ignore The Controlling Law Of The Third Circuit In Their Singular Reliance On A Seventh Circuit Decision.**

The defendants unpersuasively rely upon the Seventh Circuit Court of Appeals' decision in Freedom From Religion Foundation v. Obama, 641 F.3d 803 (7th Circ. 2011).  Although the Seventh Circuit did apply an actual legal coercion test for standing in that case no other Court of Appeals, including the Third Circuit, has ever recognized coercion as a necessary element for standing under the Establishment Clause.  The Supreme Court, even more importantly, has consistently refused to make coercion an element of the Establishment Clause, much to the chagrin of Justice Thomas, who has unsuccessfully urged such a change in the law.

The Seventh Circuit decision is contrary to all known decisions by the Supreme Court and other Circuit Courts.  The Obama decision, in fact, conflicts with the Seventh Circuit's own prior decisions holding that coercion is not a necessary element under the Establishment Clause. See Books v. Elkhart County, 401 F.3d 857 (7th Cir. 2005).  The Obama decision also conflicts with the Seventh Circuit's prior decisions recognizing the distinction between government speech endorsing religion and other government speech.  See Freedom From Religion Foundation, Inc. v. City of Marshfield, 203 F.3d 487, 491 (7th Cir. 2000).  The Seventh Circuit has long adhered to this distinction, noting in Choose Life Illinois v. White, 547 F.3d 853, 859 (7th Cir. 2008), that the Government's choice of message is generally not actionable, "subject to constitutional limitations . . . such as the Establishment Clause."

The Seventh Circuit, prior to its decision in the National Day of Prayer case, had itself consistently rejected the concept of actual legal coercion as a necessary element of an

Establishment Clause violation.  By contrast, Judge Easterbrook, who wrote the majority

decision in the National Day of Prayer case, had advocated for the adoption of a legal coercion

test ever since his dissent in American Jewish Congress v. City of Chicago, 827 F.2d 120, 137

(7th Cir. 1987) (Easterbrook, J., dissent), in which he stated that "force or funds" should be

essential elements of the Establishment Clause, although that is "plainly not the law today."  In

fact, that law did not change in the interim before the Obama decision.

The Supreme Court certainly had not changed its mind before the Seventh Circuit went

rogue.  The Supreme Court has consistently recognized that a violation of the Establishment

Clause is not predicated on coercion, a point that the Court expressly refused to reconsider in

County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 597 n. 47 (1989).  In

Allegheny, the Court expressly refused to repudiate its prior holdings.  The Court instead

proceeded "to apply the controlling endorsement inquiry, which does not require an independent

showing of coercion."

More recent decisions by the Supreme Court have also not required legal coercion as a

necessary element of standing.  For example, in McCreary County v. ACLU of Kentucky, 545

U.S. 844 (2005), the Court held that a Ten Commandments display impermissibly violated the

Establishment Clause, despite the absence of any coercion.  In Van Orden v. Perry, 545 U.S.

677, 693 (2005) (Thomas, J., concurring), moreover, Justice Thomas vainly advocated for the

Court to finally adopt coercion as the applicable test under the Establishment Clause, which is a

test that the Justice considers preferable to "the various approaches this Court now uses."  The

Supreme Court, however, has never adopted or applied Justice Thomas' coercion test.

The Seventh Circuit's decision in the National Day of Prayer case is an outlier that is

inconsistent with the controlling law of the Third Circuit, other Courts of Appeals, and the

Supreme Court.  Contrary to the defendants' harangue, moreover, no court has upheld such

proclamations on the merits when challenged under the Establishment Clause.  The Colorado

Court of Appeals most recently struck down the practice of issuing such proclamations in

Freedom From Religion Foundation, Inc. v. Hickenlooper, 2012 Colo. App. LEXIS 741 (May

10, 2012).

> **D.   Unwanted Exposure To Government Speech Endorsing Religion Is A Concrete Injury Particular To Those Nonbelievers Within The Relevant Political Community.**

Adoption of a legal coercion requirement by this court would actually preclude standing

even in cases alleging government speech evincing disapproval and hostility toward religion.  In

Catholic League for Religious and Civil Rights v. San Francisco, 624 F.3d 1043 (9th Cir. 2010),

however, the Court of Appeals found standing in a case where the plaintiffs challenged a city

resolution that was allegedly hostile to religion.  The Court considered on the merits whether the

City's resolution gave the appearance of endorsement or hostility toward religion.  Despite the

absence of coercion in this case, moreover, where no one was made to pray or legally forced to

do anything, the Court found standing "even though nothing was affected but the religious or

irreligious sentiments of the plaintiffs." Id at 1050.  According to the Court, the resolution by the

City of San Francisco "like a symbol conveys a message." Id.  The Court, therefore, found

standing because the plaintiffs had contact with the resolution.  "Were the result otherwise, a

resolution declaring Catholicism to be the official religion of the municipality would be

effectively unchallengeable." Id at 1048.

The Court of Appeals recognized in its Catholic League decision that standing has

consistently been upheld on the basis of contact with government-sponsored messages of

endorsement, including in the numerous display cases.  In the case of an official resolution by a

11

government body, moreover, the Court concluded that such a resolution, "like a symbol, conveys a message, but unlike a symbol, the message is unambiguous." Id at 1050.  To hold that such a message is not actionable flies in the face of the continued restraints applicable to government speech in the area of religious endorsement:  "Government speech must comport with the Establishment Clause." Id, quoting Pleasant Grove City v. Summum, 555 U.S. 460, 129 S. Ct. 1125, 1131-32 (2009).

Even the Supreme Court's decision in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464 (1982), does not support the defendants' departure from established principles.  In the first place, Valley Forge did not involve claims of unwelcome exposure to government speech endorsing religion.  Since that decision, moreover, courts have consistently held that Valley Forge does not mean that "psychological injury" is an insufficient basis for Article III standing.  If this were not the case, then the many subsequent judicial decisions prohibiting government speech endorsing religion would have involved plaintiffs without standing, including the Supreme Court's decisions in County of Allegheny and McCreary.

In cases involving unwelcome exposure to government speech, "the spiritual, value-laden beliefs of the plaintiffs are most often directly affected by an alleged establishment of religion.  Accordingly, rules of standing recognize that non-economic or intangible injury may suffice to make an Establishment Clause claim justiciable." Suhre v. Haywood County, 131 F.3d 1083, 1087 (4th Cir. 1997).  The Courts of Appeals also have recognized that such injuries are directly experienced by those within the political community in which the endorsement occurs.  "The circuits have thus recognized that the practices of one's own community may create a larger psychological wound than someplace we are just passing through." Id at 1087.  As a result,

plaintiffs who are part of the community where challenged religious symbolism is located, and who are directly confronted by this symbolism, have more than an abstract or generalized interest in seeing that the government observes the Constitution.  Id.

The Court of Appeals recognized the significance of membership in the relevant political community for purposes of standing in the Catholic League for Religious and Civil Rights decision.  The Court specifically recognized that the Supreme Court's decision in Valley Forge relied on the remoteness of the plaintiffs from the relevant political community in which the religious symbolism occurred.  The plaintiffs in Valley Forge "were like Protestants in Pasadena suing San Francisco over its anti-Catholic resolution."  Catholic League for Religious and Civil Rights, 624 F.3d at 1052.  "Psychological consequence," in such a remote situation does not suffice as concrete harm, but it is concrete harm where the consequences produced by government condemnation of one's own religion, or endorsement of another's religion, occurs right in one's own community.  What distinguishes Valley Forge from the many cases in which courts have found sufficiently concrete injury is that "the psychological consequence was exclusion or denigration on a religious basis within the political community."  Id at 1052.

In the present case, the Freedom From Religion Foundation is suing on behalf of its Pennsylvania members, who reside within the political community having exposure to the "Year of the Bible" resolution.  Membership exposure to the resolution, and feelings of exclusion from the immediate political community, are a concrete injury that is not just a "generalized" grievance with government.

Nor does it matter, for purposes of standing, whether the plaintiffs have been coerced or influenced to alter their behavior so as to avoid exposure to the government's endorsement of religion.  In evaluating standing, "the Supreme Court has never required that Establishment

Clause plaintiffs take affirmative steps to avoid contact which challenged displays or religious exercises." Suhre, 131 F.3d at 1088.  Similarly, the Ninth Circuit has recognized standing even in the absence of any altered behavior.  Vasquez v. Los Angeles County, 487 F.3d 1246, 1250 n. 4 (9th Cir. 2007).  In particular, the Court held that affirmative avoidance is not a necessary component of Article III's standing requirement.  The plaintiffs' presence in the affected community was sufficient for purposes of standing, "unlike the plaintiffs in Valley Forge, who were physically removed from defendant's conduct." Id at 1252.

Here, the "Year of the Bible" resolution in the present case does give the undeniable appearance of religious endorsement to those within the Pennsylvania political community, including members of FFRF.  Their injury, therefore, is not a generalized grievance, nor merely a psychological objection to government speech.  When evaluating whether such speech constitutes an impermissible endorsement of religion, the question is whether the speech sends a message to nonadherents that they are outsiders, not full members of the relevant political community, and an accompanying message to adherents that they are insiders, favored members of the political community.  Free Thought Society of Philadelphia v. Chester County, 334 F.3d 247, 260 (3rd Cir. 2003), quoting Allegheny, 492 U.S. at 628 (O'Connor, J., concurring).  The endorsement test, defined by the relevant political community, is appropriate when determining the contours of standing.  The endorsement test, in fact, has been recognized as the preferred test for judging the constitutionality of government speech or expression by the government itself. See  American Civil Liberties Union of New Jersey v. Schundler, 104 F.3d 1435, 1444 (3rd Cir. 1997).

The defendants' argument that actual legal coercion and/or altered behavior is necessary in order to challenge government speech endorsing religion is wrong.  The Establishment Clause

does not require coercion, and these plaintiffs are not merely officious intermeddlers.  They are residents of Pennsylvania, where government speech endorsing religion has been propounded as official government-sponsored orthodoxy.  The defendants' singular argument against standing is unsupported by controlling Third Circuit and Supreme Court precedent.  The defendants' argument that government speech is not actionable, but should be redressed by the electorate, is contrary to the limitations and protections intended by the Establishment Clause.

## VI.   HONORIFIC RESOLUTIONS BY A SINGLE HOUSE OF THE PENNSYLVANIA GENERAL ASSEMBLY ARE NOT LEGISLATIVE IN SUBSTANCE OR FORM.

The defendants ironically seek legislative immunity, even though they admit that the "Year of the Bible" resolution is not integral to the legislative process.  On the contrary, the defendants argue that "this resolution is not law -- it is simply a nonbinding expression of the House's collective opinion regarding the value of religion in the Commonwealth."  (Defendants' Brief at 1-2.)  They further argue that "at its essence, a legislative resolution is legislative speech. Nothing more.  Nothing less."  (Defendants' Brief at 15.)  The defendants, nonetheless, conclude that the process of real law-making would some how be adversely affected if honorific resolutions endorsing religion can be challenged.

The defendants misapprehend legislative immunity.  They seem to believe that all actions taken by legislators are protected by immunity regardless of whether the actions are legislative in character.  The defendants acknowledge, however, that legislative immunity only extends to actions "taken in the sphere of legitimate legislative activity."  (Defendants' Brief at 14.)  They also correctly note that the sphere of legitimate activity includes "introducing and voting for legislation, and also includes other related activities that are part of the legislative process, such as signing legislation into law."  (Defendants' Brief at 14.)  But the defendants then merely assume their desired conclusion, i.e., that introducing, voting for, and publishing a nonbinding

15

honorific House Resolution constitutes law-making, rather than gratuitous political grandstanding in an area in which government officials are constitutionally prohibited. The defendants do not even try to explain how this resolution which is not a law, but merely government speech touting the value of religion, somehow is integral to the function of making laws in Pennsylvania.

Legislative immunity is limited to the function of lawmaking; it is not defined by job title. The protection of legislative immunity is carefully tailored to its intended purpose. Eastland v. United States Servicemen's Fund, 421 U.S. 491, 501-02 (1975). Officials claiming protection "must show that such immunity is justified for the governmental function at issue." Hafer v. Melo, 502 U.S. 21, 28-29 (1991). The privilege inures, accordingly, only to legislators engaging in actions considered to be "an integral part of the deliberative and communicative processes by which [legislators] participate in . . . proceedings with respect to the consideration and passage or rejection of proposed legislation." Gravel v. United States, 408 U.S. 606, 625 (1972). Legislative immunity is not recognized simply for the personal or private benefit of legislators; it is intended to protect the integrity of the legislative process.

The relevant question, therefore, is whether the defendants' actions were "in the sphere of legitimate legislative activity." Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998). In answering this question, the court must consider whether the activities are both substantively and procedurally legislative in nature. Baraka v. McGreevey, 481 F.3d 187, 198 (3rd Cir. 2007) (applying the substance/procedure test to state officials claiming immunity).

In determining substantively what constitutes legislation, the Supreme Court has rejected the view that immunity protects "all conduct related to the due functioning of the legislative process." United States v. Brewster, 408 U.S. 501, 513 (1972). As to what discrete acts are

protected by legislative immunity, the Supreme Court instead has taken a narrow view: immunity is construed to reach only matters that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the constitution places within the jurisdiction of either House."  Gravel, 408 U.S. at 625, quoted in Fowler-Nash v. The Democratic Caucus of the Pennsylvania House of Representatives, 469 F.3d 328, 331 (3rd Cir. 2006).

Immunity does not extend to acts that are "casually or incidentally" related to legislative affairs but not a part of the legislative process itself.  Brewster, 408 U.S. at 528, quoted in Youngblood v. DeWeese, 352 F.3d 836, 840 (3rd Cir. 2003).  Thus, there is no immunity for essentially political activities, including "a wide range of legitimate errands performed for constituents, the making of appointments with government agencies, assistance in securing Government contracts, preparing newsletters to constituents, news releases, and outside speeches."  Id.

By contrast, activities related to informed law-making are protected by immunity.  For example, in Kilbourn v. Thompson, 103 U.S. 168 (1880), the Supreme Court held that members of Congress were immune from false-imprisonment claims arising from their acts of voting for a resolution that ordered a witness' arrest for failure to cooperate with a congressional investigation.  The Supreme Court also held that legislative immunity extended to claims that members of a state legislature's Un-American Activities Committee had violated a witness' civil rights in the course of an investigative hearing.  Tenney v. Brandhove, 341 U.S. 367, 376-78 (1951).  Investigation, according to the Court, is within the "sphere of legitimate legislative activity," to which legislative immunity extends because it may affect or influence the laws that

the legislature chooses to pass or consider.  As the Court noted in <u>Eastland</u>, 421 U.S. at 504, "the power to investigate is inherent in the power to make laws because a legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change."

Since <u>Tenney</u>, the Supreme Court has further recognized immunity for activities that are integral to the deliberative legislative process, including the act of voting for resolutions of substantive effect, as in <u>Powell v. McCormack</u>, 395 U.S. 486, 504-05 (1969).  The regulatory or budgetary effect of legislative action, in fact, is a hallmark of traditional legislation, such as where it "reflects a discretionary policymaking decision implicating the budgetary priorities of a city and the services that the city provides to its constituents." <u>Bogan</u>, 523 U.S. at 55-56, quoted in <u>Youngblood</u>, 352 F.3d at 840.  Legislating, in other words, essentially involves making laws that allocate resources or regulate behavior.

The Supreme Court has been sparing in its recognition of claims to absolute official immunity.  Especially in the realm of legislative immunity, "the Court has been careful not to extend the scope of the protection further than its purposes require." <u>Forrester v. White</u>, 484 U.S. 219, 226 (1988).  Thus, the nature of the function performed, "not the identity of the actor who performed it, inform our [Supreme Court] immunity analysis." <u>Id</u> at 229.  In the final analysis, therefore, "whether an act is legislative turns on the nature of the act." <u>Bogan</u>, 523 U.S. at 54.

Even the pomp and ceremony of the actual legislative arena is beyond the proper scope of common law legislative immunity.  <u>See</u> <u>Simmermon v. Gabbianelli</u>, 2012 U.S. Dist. LEXIS 42658 (D. N.J. 2012).  In <u>Simmermon</u>, the court considered whether legislative immunity was applicable to legislative prayer at the beginning of open legislative sessions.  Recognizing that

18

the purpose of legislative immunity is to protect the integrity of the legislative process, the court

concluded that legislative prayer did not implicate that process. "The prayer practice, as the

district court found, bears no substantive relation to the process of enacting legislation." Id at 32,

quoting Chambers v. Marsh, 675 F.2d 228, 232 (8th Cir. 1982), reversed on other grounds, 463

U.S. 783 (1983).

In the present case, the "Year of the Bible" resolution is neither substantively nor

procedurally legislative.  It is not substantively legislative because it "did not create, alter, or

affect any legislation, much less legislation that involved a policy-making or line-drawing

decision." Simmermon, 2012 U.S. Dist. LEXIS 42658 at 39.  The defendants, in fact, admit that

the "Year of the Bible" resolution is not a law -- and it did not involve law-making by the

defendants.  The resolution, instead, is gratuitous government speech "regarding the value of

religion in the Commonwealth."  Nothing more.  Nothing less.  Nothing legislative.

The "Year of the Bible" is neither procedurally legislative, nor integral to the law-making

process in Pennsylvania.  Law-making in Pennsylvania constitutionally requires affirmative

action by both houses of the General Assembly and either the approval of the Governor or

override of his veto, as prescribed by Article IV, section 15 of the Pennsylvania Constitution.

See Gwinn v. Kane, 348 A.2d 900, 909 (Pa. 1975).  Under Article II, section 1 of the

Pennsylvania Constitution, moreover, the legislative power is vested in the General Assembly

and that power is defined as the power "to make, alter or repeal laws."  Jubelirer v. Rendell, 953

A.2d 514, 529 (Pa. 2008).  Here, the resolution at issue was approved by only a single house of

the General Assembly, and it was not signed by the Governor.

On the other hand, as the defendants also admit, the "Year of the Bible" resolution does

constitute official government speech that endorses religion -- and that is a problem for these

19

defendants.  Government speech exhorting the virtues of the Christian religion goes way beyond the role of a limited government operating under constitutional restraint.

Enforcing the constitutional limits on government speech is a proper function of the courts, as recognized ever since the Supreme Court's decision in <u>Marbury v. Madison</u>, 5 U.S. 137 (1880).  The role of the court in this case is constitutionally appropriate and it does not raise any separation of powers or prudential considerations because the defendants simply did not engage in legislative activity.  The law-making function of the defendants is unaffected by enforcing constitutional restraints on extracurricular activities that give the appearance of official government endorsement of religion.  Saying "no" to naked government speech that promotes religion does not implicate the actual law-making function reserved to the General Assembly and the Governor.  On the contrary, actual productive law-making may be encouraged.

## VII.   CONCLUSION.

For all the above reasons, the defendants' motion to dismiss should be denied.

Dated:  June 15, 2012

/s/ Lawrence M. Otter
Lawrence M. Otter
Attorney-at-Law
P.O. Box 2131
Doylestown, PA 18901
(267) 261-2948
Attorney for Plaintiff

/s/Richard L. Bolton
Richard L. Bolton
BOARDMAN & CLARK LLP
1 South Pinckney Street, 4th Floor
Madison, WI 53701-0927
(608) 257-9521
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2012, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send notification electronically to all attorneys of record.

*/s/ Richard L. Bolton*
Richard L. Bolton

F:\DOCS\WD\26318\32\A1421594.DOC