**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION** | : | **Case No. 1:12-cv-536** |
| **FOUNDATION, INC.,** | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **REPRESENTATIVE RICK** | : | |
| **SACCONE, CLANCY MYER** | : | |
| and **ANTHONY FRANK BARBUSH** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the court in the above-captioned matter is the motion to dismiss (Doc. 11) of defendants Representative Rick Saccone, Clancy Myer, and Anthony Barbush (collectively, "defendants," or "legislative defendants"). Defendants argue that plaintiff Freedom From Religion Foundation's ("FFRF" or "the Foundation") complaint (Doc. 1) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons set forth in detail below, defendants' motion to dismiss is granted.

**I.    <u>Factual and Procedural History</u>**

In a resolution unanimously passed on January 24, 2012, the Pennsylvania House of Representatives decreed 2012 to be the "Year of the Bible" in Pennsylvania.[1] H.R. 535, 2011-2012 Gen. Assemb., Reg. Sess. (Pa. 2012) (hereinafter

---

[1] When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Gelman v. State Farm Mut.</u>

"H.R. 535," or "the resolution").  H.R. 535 reads as follows:

> Declaring 2012 as the "Year of the Bible" in Pennsylvania.
> WHEREAS, The Bible, the word of God, has made a unique
> contribution in shaping the United States as a distinctive and blessed
> nation and people; and
> WHEREAS, Deeply held religious convictions springing from the holy
> scriptures led to the early settlement of our country; and
> WHEREAS, Biblical teachings inspired concepts of civil government
> that are contained in our Declaration of Independence and the
> Constitution of the United States; and
> WHEREAS, Many of our great national leaders, among them
> President Washington, President Jackson,[2] President Lincoln,
> President Wilson and President Reagan, paid tribute to the influence
> of the Bible in our country's development, as exemplified by the words
> of President Jackson that the Bible is "the rock on which our Republic
> rests"; and
> WHEREAS, The history of our country clearly illustrates the value of
> voluntarily applying the teachings of the scriptures in the lives of
> individuals, families and societies; and

---

Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

[2] As an aside to their primary argument that H.R. 535 violates the Establishment Clause, FFRF takes issue with the historical accuracy of statements made in the resolution, particularly as they relate to the influence of religion in the American political system.  The court expresses no opinion on the historical or theological propriety of casting, for example, President Andrew Jackson – a man whose administration sent 16,000 men, women, and children of the Cherokee Nation on a forced march west from their ancestral homelands east of the Mississippi River (known as the "Trail of Tears"), during which a quarter of them perished from cold, hunger, and disease – as a paragon of Christian virtue in government.  See generally Chadwick Smith & Faye Teague, *The Response of the Cherokee Nation to the Cherokee Outlet Centennial Celebration: A Legal and Historical Analysis*, 29 TULSA L.J. 263 (1993).

WHEREAS, This nation now faces great challenges that will test it as it
has never been tested before; and
WHEREAS, Renewing our knowledge of and faith in God through holy
scripture can strengthen us as a nation and a people; therefore be it
RESOLVED, That the House of Representatives declare 2012 as the
"Year of the Bible" in Pennsylvania in recognition of both the
formative influence of the Bible on our Commonwealth and nation and
our national need to study and apply the teachings of the holy
scriptures.

In a November 1, 2011 memorandum to the House, Representative Rick

Saccone ("Saccone") explained that the purpose behind declaring 2012 to be the

"Year of the Bible" would be to recognize that, "as not only Pennsylvania, but the

United States, continues to face great tests and challenges, we must look to our

faith in God and the Holy Scripture to provide us with the strength and courage to

face these great trials."  (Complaint, Doc. 1, ¶ 13).  Saccone proffered the resolution

as "noncontroversial," meaning that it could be added to a bundle of other

resolutions and voted on without debate.  As a "simple resolution," H.R. 535 was not

required to pass through both houses of the General Assembly.  FFRF further

alleges that some representatives, having unknowingly voted for the resolution

amidst a larger bundle, later expressed their belief that it was, in fact, a

controversial measure.

FFRF filed this lawsuit pursuant to 28 U.S.C. § 1983, naming as defendants

Rep. Saccone, Clancy Myer, Parliamentarian of the House of Representatives, and

Anthony Frank Barbush, Chief Clerk of the House.  FFRF seeks a declaratory

judgment, pursuant to 28 U.S.C. § 2201, that H.R. 535 violates the Establishment

Clause of the First Amendment[3] and Article I, section 3 of the Pennsylvania Constitution,[4] and an injunction enjoining the defendants from further enactment and publication of resolutions "establishing and endorsing a state-sanctioned religion." (Complaint, Doc. 1, ¶ 2). FFRF further asks this court to order the defendants to take corrective action to publicly report the unconstitutionality of H.R. 535, to declare that Pennsylvania is subject to the restraints of the Establishment Clause, to declare that the "theocratic principles of the Bible" do not constitute the established religion of Pennsylvania, to declare that the government of Pennsylvania is not Judeo-Christian, and to award FFRF attorney's fees and costs.

FFRF is a non-profit organization composed of "non-theists" that advocates for the separation of church and state. FFRF claims more than 17,500 members, including at least 599 members in Pennsylvania. The Foundation filed this suit on behalf of its Pennsylvania members, each of whom opposes governmental speech that endorses religion because "they are made to feel as if they are political outsiders." (Id. at ¶ 8). FFRF alleges that their members have been injured by past

---

[3] The First Amendment states, in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. CONST. amend I.

[4] "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship." PENN. CONST. art. I, § 3.

and prospective exposure to the resolution, which they argue impermissibly

advances, endorses, and promotes a state religion and is an illegitimate exercise of

state power.

The matter has been fully briefed, and is ripe for disposition.

**II.   Discussion**

Defendants raise two independent grounds for dismissing the complaint:

first, that the Foundation lacks standing to bring this action under Article III of the

Constitution, and second, that even if the Foundation has standing, defendants are

nonetheless shielded from suit by the doctrine of legislative immunity.  The court

will address each of these arguments in turn.

**A.     Standing**

Proper subject-matter jurisdiction is an inescapable predicate to a discussion

of a case's merits.  The judicial power of the United States is limited to "Cases" and

"Controversies," and "'Article III standing . . . enforces the Constitution's case-or-

controversy requirement.'" Hein v. Freedom From Religion Found., Inc., 551 U.S.

587, 597-98 (2007) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)).

"In essence the question of standing is whether the litigant is entitled to have the

court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422

U.S. 490, 498 (1975); see also American Civil Liberties Union of New Jersey v.

Township of Wall, 246 F.3d 258, 261 (3d Cir. 2001) ("ACLU-NJ") (standing "'is not

merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of

a lawsuit,' but an integral part of the governmental charter established by the

5

Constitution.") (quoting <u>Valley Forge Christian College v. Americans United for</u>
<u>Separation of Church and State, Inc.</u>, 454 U.S. 464, 476 (1982)).

   The requirements of Article III standing are "familiar."   <u>Elk Grove Unified</u>
<u>School Dist. v. Newdow</u>, 542 U.S. 1, 11-12 (2004).  The plaintiff must show that he or
she suffered an "injury in fact," that the complained-of conduct is the cause of the
plaintiff's injury, and that a favorable judgment from the court will redress that
injury.  <u>Id.</u>; <u>see also</u> <u>Hein</u>, 551 U.S. at 598 ("A plaintiff must allege personal injury
fairly traceable to the defendant's allegedly unlawful conduct and likely to be
redressed by the requested relief.") (internal quotation and citation omitted).  More
precisely, the "irreducible constitutional minimum of standing" consists first of an
invasion of a legally protected interest that is (a) concrete and particularized, and
(b) actual and imminent, rather than conjectural or hypothetical.  <u>Lujan v.</u>
<u>Defenders of Wildlife</u>, 504 U.S. 555, 560-562 (1992) (citing <u>Warth</u>, 422 U.S. at 508;
<u>Sierra Club v. Morton</u>, 405 U.S. 727, 740-41 (1972); and <u>Whitmore v. Arkansas</u>, 495
U.S. 149, 155 (1990)).  Second, the "causal connection between the injury and the
conduct complained of" must be "fairly . . . trace[able] to the challenged action of
the defendant, and not . . . th[e] result [of] the independent action of some third
party not before the court."  <u>Id.</u> at 560 (alterations in original) (internal quotations
omitted).  Third, it must be "likely" that the injury will be "redressed by a favorable
decision."  <u>Id.</u> at 560-61.  "At bottom, 'the gist of the question of standing' is whether
petitioners have 'such a personal stake in the outcome of the controversy as to
assure that concrete adverseness which sharpens the presentation of issues upon

which the court so largely depends for illumination.'" <u>Massachusetts v. EPA</u>, 549

U.S. 497, 517 (2007) (quoting <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1962)).

Plaintiffs carry the burden of establishing the elements of standing, and they

must meet that burden "'in the same way as any other matter on which the plaintiff

bears the burden of proof, i.e., with the manner and degree of evidence required at

successive stages of the litigation.'" <u>ACLU-NJ</u>, 246 F.3d at 261 (quoting <u>Lujan</u>, 504

U.S. at 561).  The Foundation has standing only to the extent that its members have

standing, and so FFRF's right to sue is "strictly dependent" on showing that its

members meet the requirements of Article III.  <u>See id.</u> (citing <u>Valley Forge</u>, 454 U.S.

at 476 n.14; and <u>Freedom From Religion Found., Inc. v. Zielke</u>, 845 F.2d 265, 267

(7th Cir. 1988)).

The injury-in-fact requirement may be "particularly elusive" in

Establishment Clause cases because plaintiffs do not typically allege an invasion of

a physical or economic interest, but a plaintiff may nonetheless show an injury that

is sufficiently concrete, particularized, and actual to confer standing.  <u>See</u> <u>Catholic</u>

<u>League for Religious and Civil Rights v. City and County of San Francisco</u>, 624 F.3d

1043, 1049 (9th Cir. 2010) (en banc).  A plaintiff has suffered a concrete and

particularized injury-in-fact when the government directly sponsors and

communicates a religious message that is offensive to her beliefs.  <u>See</u> <u>*In re* Navy</u>

<u>Chaplancy</u>, 534 F.3d 756, 764 (D.C. Cir. 2008) ("In the religious display and prayer

cases, the Government was actively and directly communicating a religious

message through religious words or religious symbols – in other words, it was

7

engaging in religious speech that was observed, read, or heard by the plaintiffs in those cases."); see also Newdow v. Roberts, 603 F.3d 1002, 1014 (D.C. Cir. 2010) (Kavanaugh, J., concurring) (an Article III injury occurs when a plaintiff "sees or hears a government-sponsored religious display or speech that offends his or her beliefs"); Catholic League, 624 F.3d at 1052 (a concrete harm is produced by "government condemnation of one's own religion *or endorsement of another's in one's own community*") (emphasis added); Freethought Soc. of Greater Philadelphia v. Chester County, 334 F.3d 247, 244 n.3 (3d Cir. 2003) (finding "not . . . convincing" defendants' argument that plaintiffs, suing to remove a plaque of the Ten Commandments from a county courthouse, lacked standing, and that there was "little question" that plaintiff had suffered an injury-in-fact) (internal citations and quotations omitted).  The Supreme Court has implicitly recognized standing[5] when plaintiffs were exposed to, for example, monuments displaying the Ten

---

[5] The court notes the general rule that cases recognizing jurisdiction *sub silentio* are not binding precedent on the issue of standing for future cases with similar facts.  See Association of Westinghouse Salaried Emp. v. Westinghouse Elec. Corp., 210 F.2d 623, 628-29 (3d Cir. 1954).  However, the court agrees with Judge Kavanaugh's observation that "the Supreme Court's consistent adjudication of religious display and speech cases over a span of decades suggests that the Court has thought it obvious that the plaintiffs in those matters had standing," and that "[t]o ignore the import of those cases for the standing analysis, one would have to believe the Supreme Court repeatedly overlooked a major standing problem and decided a plethora of highly controversial and divisive Establishment Clause cases unnecessarily and inappropriately."  Newdow, 603 F.3d at 285 (Kavanaugh, J., concurring).

Commandments,[6] a creche in a courthouse,[7] and student-led prayer at football

games.[8]  Establishment Clause injury is not typically measured in dollars and cents,

and non-economic injury may be sufficiently concrete to establish standing under

Article III.  See generally United States v. SCRAP, 412 US. 669, 686-88 (1973).

Defendants argue that FFRF's complaint amounts to the type of "abstract

claim" that the Supreme Court rejected in Valley Forge Christian College v.

Americans United for Separation of Church & State, 454 U.S. 464 (1982).  In Valley

Forge, the plaintiff objected to the Department of Health, Education and Welfare's

conveyance of seventy-seven acres of surplus federal land to an avowedly sectarian

Christian college.  Id. at 468.  The plaintiff organization brought suit, challenging

the conveyance under the Establishment Clause, and asserting standing under the

exception to the general prohibition of taxpayer suits[9] and more generally as

---

[6] Van Orden v. Perry, 545 U.S. 677 (2005); McCreary Cnty. v. American Civil
Liberties Union of Ky., 545 U.S. 844 (2005)

[7] Cnty. of Allegheny v. American Civil Liberties Union, 492 U.S. 573 (1989).

[8] Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000).

[9] In Flast v. Cohen, the Supreme Court recognized a narrow exception to the
general prohibition on taxpayer standing when the plaintiff alleges a violation of the
Establishment Clause through a Congressional expenditure.  392 U.S. 83 (1968).  In
Valley Forge, the Court addressed the application of Flast to a federal land
conveyance.  The Court rejected the plaintiff's taxpayer standing argument, holding
that the Flast exception was limited to cases in which the plaintiff challenges an
exercise of Congress's power under the Spending Clause, U.S. CONST. art. I, § 8, on
the grounds that the act "exceeds specific constitutional limitations upon the
exercise of the taxing and spending power."  Valley Forge, 454 U.S. at 479 (quoting
Flast, 392 U.S. at 102-103).  Valley Forge involved a conveyance of real property
pursuant to the Property Clause, art. IV, § 3, cl. 2 (giving Congress the "Power to
dispose of and make all needful Rules and Regulations respecting the . . . Property

citizens with an interest in governmental observance of the Constitution.  <u>Valley</u>

<u>Forge</u>, 454 U.S. at 481-484.   The court rejected both arguments, and with regard to

the latter stated that "[w]e simply cannot see that respondents have alleged an

*injury* of *any* kind, economic or otherwise, sufficient to confer standing."  <u>Id.</u> at 486.

  As the Ninth Circuit recognized in <u>Catholic League</u>, a "psychological

consequence" fails to establish standing when it is born merely of disagreement

with government conduct, but it *does* constitute a concrete harm when it is

produced by "government condemnation of one's own religion or endorsement of

another's *in one's own community*."  624 F.3d 1043, 1052 (en banc) (emphasis added).

In <u>Catholic League</u>, the San Francisco Board of Supervisors sought to address a

doctrinal decision of the Catholic church that homosexual marriage and adoption

were "immoral," which caused the Archdiocese of San Francisco to prohibit

Catholic adoption agencies from placing children in gay households.  <u>Id.</u> at 1047.

The Board passed a resolution accusing the Vatican of meddling in governmental

affairs.  It called the Vatican's ruling "hateful and discriminatory rhetoric . . . that is

both insulting and callous," and urged Catholic charities in San Francisco to "defy

all discriminatory directives" from the Archdiocese.  <u>Id.</u>  While ultimately

---

belonging to the United States.").

  FFRF does not assert taxpayer standing under <u>Flast</u> in the case *sub judice*.  It
is for this reason that <u>Hein v. Freedom from Religion Foundation</u> is also inapposite,
as <u>Hein</u> dealt strictly with the issue of taxpayer standing under <u>Flast</u> and <u>Valley</u>
<u>Forge</u> as applied to action taken by the executive branch.  551 U.S. 587, 596 (2007)
("The only asserted basis for standing was that the individual respondents are
federal taxpayers who are opposed to the use of Congressional taxpayer
appropriations to advance and promote religion.") (internal quotations omitted).

dismissing on the merits of the plaintiff's Establishment Clause claim, a majority of

the Ninth Circuit sitting en banc held that the plaintiffs had standing.

When the government engages in a message of express condemnation or

endorsement of a religion, there need not be a concomitant requirement that

citizens act in accordance with that message for it to effect an injury.  See, e.g.,

Engel v. Vitale, 370 U.S. 421, 422-23 n.1, 436 (1962) (deeming unconstitutional a

school board policy to begin each day with a prayer despite the fact that students

were not required to recite the prayer, and teachers were prohibited from

commenting on a student's decision to participate or not to participate).  The

instant case differs from Valley Forge in that the conduct of which FFRF complains

is not some remote government land conveyance, but rather a direct and explicit

message, embodied in a unanimously passed resolution of the House of

Representatives, that embraces and endorses the Christian religion to the exclusion

of all other religions, or of non-religion.  See H.R. 535 ("Renewing our knowledge of

and faith in God through holy scripture can strengthen us as a nation and a

people.").  H.R. 535 has far more in common with the litany of cases in which the

Supreme Court has addressed government-sponsored religious displays and

speech.  See Newdow v. Roberts, 603 F.3d 1002, 1014 (D.C. Cir. 2010) (Kavanaugh,

J., concurring) (listing cases); see also id. at 1014 n.1 ("The display and speech cases

are distinct from those in which a person simply becomes aware of government

conduct to which the plaintiff objects.").

This case is not the first time that a plaintiff has challenged the

constitutionality of government-declared "Year of the Bible."  Indeed, H.R. 535 is

nearly identical to a joint-resolution of Congress authorizing and requesting

president Reagan to declare 1983 "The Year of the Bible."[10]  Here, FFRF has

alleged that exposure to H.R. 535 creates a "hostile environment" that emphasizes

and encourages "the integration of Christianity into the offices of government," and

that the resolution sends the message that Christian beliefs are more legitimate in

the eyes of the Commonwealth than other religions or non-religions.  FFRF has

satisfied their burden to plead an injury-in-fact.

The final two aspects of Article III standing – causation and redressability –

need be addressed only briefly.  FFRF alleges that the injury they suffer is caused

directly by the passage of H.R. 535, and they seek, *inter alia*, a declaratory judgment

---

[10] See Proclamation No. 5018, 48 Fed. Reg. 5527 (Feb. 3, 1983); Act of Oct. 4, 1982, Pub. L. No. 97-280, 96 Stat. 1211 (1982).  Candor compels the court to recognize that there is room for honest disagreement about when Establishment Clause injuries are sufficient for Article III standing, and two district court cases addressing President Reagan's proclamation provide a convenient heuristic.

In Zwerling v. Reagan, the Central District of California addressed whether atheist plaintiffs had standing to challenge President Reagan's proclamation.  576 F. Supp. 1373 (C.D. Cal. 1983).  Finding that the proclamation did not compel any action or inaction on the part of the plaintiffs, the court held that it was not a "law" within the meaning of the Establishment Clause, that there was no injury, and that there was therefore no standing.  Id. at 1376-78.  But, addressing the same proclamation, the court in Gaylor v. Reagan held that for the plaintiff's non-theist beliefs "[t]o be subjected to such reproach by [her] government is to suffer bona fide injury."  553 F. Supp. 356, 360 (W.D. Wis. 1982).

To the extent that the court's ruling here is in tension with Zwerling, the court notes its disagreement with the premise upon which that decision appears to have been based – that to suffer an Establishment Clause injury, one must be coerced by the government into performing or abstaining from some action.  As discussed at length *supra*, the precedents of the Supreme Court and of numerous courts of appeals suggest otherwise.

that the resolution is unconstitutional.  If FFRF prevails on the merits of their claims, a decision declaring the resolution void would redress their injury by communicating that the House has transgressed the boundaries of our Constitution and the First Amendment.  See Catholic League, 624 F.3d at 1053 ("Plaintiffs seek a declaratory judgment that the resolution is unconstitutional . . . . By declaring the resolution unconstitutional, the official act of the government becomes null and void.").  Hence, the court concludes that FFRF has carried its burden to establish standing under Article III of the Constitution.

### B.   Legislative Immunity

Having determined that FFRF has standing to bring this claim, the court now addresses whether this suit is nonetheless barred by the doctrine of absolute legislative immunity.  For reasons discussed in detail below, the court finds that defendants are entitled to absolute immunity from FFRF's suit.

Legislative immunity has long been a fixture of our constitutional system. "The privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings has taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries."  Tenney v. Brandhove, 341 U.S. 367, 372 (1951).  This legislative "freedom of speech" is enshrined in the Constitution, see U.S. CONST. art. I, § 6 ("[F]or any speech or debate in either House, [Senators and Representatives] shall not be questioned in any other place."), and a number of state constitutions ratified roughly contemporaneously with the federal Constitution contained similar provisions, see Tenney, 341 U.S. at 374 n.3 (listing

states).

In order to faithfully carry out their duties, "'it is indispensably necessary . . . that [legislators] should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense.'" Id. at 373 (quoting II WORKS OF JAMES WILSON 38 (Andrews ed. 1896)).  Following this reasoning, the Supreme Court held in Tenney that state legislators are immune from suit under § 1983 when "acting in the sphere of legitimate legislative activity." Id. at 376-77; see also Bogan v. Scott-Harris, 523 U.S. 44, 48-49 (1998) (explaining that "legislators were entitled to absolute immunity from suit at common law and that Congress did not intend the general language of § 1983 to impinge on a tradition so well grounded in history and reason") (internal citation and quotations omitted).  Legislative immunity does not just insulate legislators from monetary damages, but cloaks them in immunity from all suits.  Id. at 52 (discussing the need to shield legislators from the "time and energy required to defend against a lawsuit").

Legislators are not immune from suit in all facets of their lives, but rather only for those acts that are "legislative" in nature.[11]  A legislative act is any action "with respect to the consideration and passage or rejection of proposed legislation

---

[11] The Third Circuit has determined that the scope of immunity afforded to state legislators is "coterminous" with the immunity extended to members of Congress through the Speech or Debate Clause.  Youngblood v. DeWeese, 352 F.3d 836, 840 (3d Cir. 2003).  Hence, Supreme Court precedent demarcating the boundaries of a "legislative act" under the Speech or Debate Clause applies equally to the state legislative defendants in this case.

14

or with respect to other matters which the Constitution places within the jurisdiction of either House."  Gravel v. United States, 408 U.S. 606, 625 (1972).  A legislator's motives are irrelevant to a claim of immunity, Youngblood, 352 F.3d at 839-40 ("'[t]he claim of an unworthy purpose does not destroy the privilege'") (quoting Tenney, 341 U.S. at 377), and the legitimacy of a legislative inquiry is not "defined by what it produces."  Eastland v. United States Servicemen's Fund, 421 U.S. 491, 5078-09 (1975).

FFRF attempts to distinguish the resolution at issue in this case from "real law-making," arguing that H.R. 535 is nothing more than "gratuitous political grandstanding," (Doc. 19 at 15-16).  Fatal to its claim, FFRF cannot escape Supreme Court precedent stating that "[c]ommittee reports, *resolutions*, and the act of voting *are equally covered*."  Powell v. McCormack, 395 U.S. 486, 502-03 (1969) (emphasis added).  Nonetheless, FFRF suggests that, to qualify as a legislative act, there must be some allocation of resources or regulation of behavior.  (Doc. 19 at 18).  This argument is unpersuasive.  Courts have routinely considered many actions taken by legislators that go beyond voting for legislation to be "legislative acts."  See, e.g., Eastland, 421 U.S. at 507 (issuing subpoenas and seizing property and records for committee hearings falls within sphere of legislative acts); *In re* Grand Jury Subpoenas, 571 F.3d 1200, (D.C. Cir. 2009) (statements made by a congressman to the House Ethics Committee regarding private funding for a trip shielded from subpoena by a grand jury); Ray v. Proxmire, 581 F.2d 998, 1000 (D.C. Cir. 1978) (senator immune from liability for allegedly libelous statement made in letter

15

submitted to Senate Ethics Committee); <u>McSurely v. McClellan</u>, 553 F.2d 1277,

1286-87 (D.C. Cir. 1976) (legislative fact-finding is protected by the Speech or

Debate Clause).  It is pellucidly clear that resolutions, whether passed by a single

house or both, whether creating legally binding obligations or not, fall squarely

within the scope of absolute legislative immunity from suit.  For this reason,

defendants in this case are entitled to absolute immunity from suit, and FFRF's

complaint must be dismissed.

**III.**    **<u>Conclusion</u>**

  The vast majority of legislative resolutions are entirely appropriate and serve

legitimate public purposes, such as honoring or commemorating individual

achievements, notable anniversaries, Commonwealth resources, and military

service and sacrifice.  <u>See, e.g.</u>, S.R. 267, 2011-2012 Gen. Assemb., Reg. Sess. (Pa.

2012) (commemorating the 100th anniversary of the Girl Scouts); S.R. 287, 2011-2012

Gen. Assemb., Reg. Sess. (Pa 2012) (designating April 22, 2012 as "Earth Day" in

Pennsylvania); H.R. 313, 2011-2012 Gen. Assemb., Reg. Sess. (Pa. 2011) (recognizing

the passing of Corp. Frank W. Buckles, America's last survivor of World War I); S.R.

116, 2011-2012 Gen. Assemb., Reg. Sess. (Pa. 2011) (designating May 2011 as YMCA

Appreciation Month) H.R. 161, 2011-2012 Gen Assemb., Reg. Sess. (Pa. 2011)

(recognizing a Philadelphia high school team's state championship win).  However,

the court's determination that the defendants engaged in a "legislative act" for

purposes of immunity should not be viewed as judicial endorsement of <u>this</u>

resolution.  It most certainly is not.  At best, H.R. 535 is a benign attempt to reaffirm

the underlying principles of the Reagan proclamation of 1983.  At worst, it is

premeditated pandering designed to provide a reelection sound bite for use by

members of the General Assembly.  But regardless of the motivation behind H.R.

535, its express language is proselytizing and exclusionary (e.g., " Renewing our

knowledge of and faith in God through holy scripture can strengthen us as a nation

and a people").  The court is compelled to shine a clear, bright light on this

resolution because it pushes the Establishment Clause envelope behind the safety

glass of legislative immunity.  That it passed unanimously is even more alarming.

This judicial rebuke of the resolution is not intended to impugn the religious beliefs

of any citizen.  To the contrary, the court's disapprobation is directed to the blatant

use of legislative resources in contravention of the spirit – if not the letter – of the

Establishment Clause.  At a time when the Commonwealth of Pennsylvania faces

massive public policy challenges, these resources would be far better utilized in

meaningful legislative efforts for the benefit all of the citizens of the

Commonwealth, regardless of their religious beliefs.

    An appropriate order will issue.


    S/ Christopher C. Conner
    CHRISTOPHER C. CONNER
    United States District Judge


Dated:        October 1, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION** | : | **Case No. 1:12-cv-536** |
| **FOUNDATION, INC.,** | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **REPRESENTATIVE RICK** | : | |
| **SACCONE, CLANCY MYER** | : | |
| **and ANTHONY FRANK BARBUSH** | : | |
| **Defendants** | : | |

### <u>ORDER</u>

AND NOW, this 1st day of October, 2012, upon consideration of defendants'

motion to dismiss (Doc. 11), and for the reasons expressed in the accompanying

memorandum, it is here by ORDERED that defendants' motion to dismiss is

GRANTED.  The Clerk of Court is directed to close the case.


    S/ Christopher C. Conner    
CHRISTOPHER C. CONNER
United States District Judge